604 So.2d 271 (1992)
MaLinda WELLS
v.
STATE of Mississippi.
No. 90-KA-335.
Supreme Court of Mississippi.
June 17, 1992.
*272 Joseph C. Langston, Langston Langston Michael & Bowen, Booneville, for appellant.
Michael C. Moore, Atty. Gen., Ellen Y. Dale, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before DAN M. LEE, P.J., and PITTMAN and BANKS, JJ.
DAN M. LEE, Presiding Justice, for the Court:
This is an appeal from the Lee County Circuit Court by MaLinda Wells following her conviction for the crime of embezzlement and sentence of five (5) years to the custody of the Mississippi Department of Corrections. Ms. Wells appeals her conviction assigning four (4) errors which are as follows:
I. The trial court erred in allowing into evidence a summary of the business transactions of Toby's Toys which was not properly authenticated.
II. The court erred in allowing into evidence a video tape without the establishment of the proper chain of custody.
III. The court erred in allowing the prosecution to select certain portions of the video tape for viewing by the jury to the exclusion of all other portions of the video tape.
IV. The trial court erred in allowing the testimony of Robert Reznikoff wherein Reznikoff was permitted to state his opinions and interpretations of the defendant's actions depicted upon the video tape which pertained to the ultimate issue of fact before the jury.
In this opinion, we find it necessary to address all of Wells' assignments of error, and we devote particular emphasis to Wells' fourth (IV) assignment of error concerning the scope of lay witness opinion testimony governed by M.R.E. 701. In the end, we affirm Wells' conviction and sentence.

FACTS
From February until May 6, 1988, MaLinda Wells was employed as a part-time cashier at Toby's Toys in Tupelo, Mississippi, working the 4:00 p.m.  9:00 p.m. shift. In April of 1988, less than three months after Wells began her employment there, a routine audit of cash register reports indicated that certain merchandise was leaving the store which was not being "rung up" at the cash register operated by Wells. According to Mr. Robert Reznikoff, store owner, "it was brought to my attention ... that it seemed funny we were coming in with a large overage with checks and bank cards, and a shortage in cash, one offsetting the other." Therefore, Reznikoff consulted with the Tupelo Police Department, and a detective suggested that Reznikoff utilize existing surveillance cameras to tape Wells' activities during her work *273 shift.[1] On May 6, 1988, Reznikoff arranged for the taping of Wells' work shift, from 4:00 p.m. until 9:00 p.m. Allegedly, the tape revealed at least three instances on this particular afternoon wherein Wells pocketed money from the register.
Wells was discharged from her employment at Toby's Toys. In August of '88, the grand jury returned an indictment charging that Wells embezzled $3,584.26 over a period of approximately three (3) months.
There was only one primary witness at trial, Mr. Robert Reznikoff, store owner. Reznikoff explained the events which caught his attention as a result of the April, 1988, audit of the store.
Upon finding out that there was a big discrepancy between the cash short and the checks being over, the first thing I had done was to break out the individual retail tapes of the register. It shows each ring of the register, every transaction for the specific days, to find out how that could be. We verified that the checks were over, that we had received the checks, they were showed in our bank deposit checks in a certain amount, but when we went back to the detail tape there is no place that we could find a check for that amount or a sale rung up for that amount... .
As Reznikoff explained, he suspected that merchandise was leaving his store which was not being rung into the register. Therefore, Reznikoff prepared a summary of the occasions when he discovered checks in the bank deposit which were not appearing on the register detail tape. Based on this summary of financial data, Reznikoff observed that this abnormality occurred only on days when Wells worked and only at her register. This time period included various days between February 20, 1988, to May 6, 1988. Reznikoff testified from the financial summary which he prepared. At trial, Reznikoff explained his internal auditing procedures and asserted that he was able to document $3584.26 total amount in actual checks that were allegedly not recorded by Wells during her tenure at Toby's Toys.
Reznikoff explained that he arranged to have MaLinda Wells videotaped on May 6, 1988. There were at least three places on the four hour tape which were of consequence to the charge in the indictment against MaLinda Wells. Reznikoff played three sections for the jury and explained standard procedure for operating a cash register and specifically how Wells' actions deviated from standard practice. On cross-examination, Reznikoff explained his theory that Wells would take checks from customers for big ticket items and provide the customer with an internal receipt rather than a true cash register receipt from the store.
A.  we also use another form of a duplicate receipt. When we sold toys which had a price ticket on it, you would come up and she would just ring it in the register and a receipt would come out. We also sold things like swimming pools, casual furniture, which would be a table and chair set, umbrellas. On a large ticket purchase like that, since the items were kept in the warehouse area behind the store, they had to fill out a handwritten receipt document listing the stock number of each item the customer bought, because the table might be one stock number, the chairs would be another stock number, umbrella would be another stock number. From this receipt, we could then go back to the back room and pull the items. The receipt was only an internal document; it was not truly a receipt. What happened, when the receipt was written the clerk was supposed to take it to the cashier who would then enter the amounts of each of the items on the page into the cash register, and that receipt was the one that was supposed to go to the customer. What MaLinda was doing,  and it is on the tape, *274 though I didn't show it,  is she failed to ring these items in the register, gave the customer half of that receipt form so that the customer walked out with a receipt but not a cash register receipt; it was never rung in the register. That's what created the opening to take money without showing a shortage. There was never accountability in the register. The customer walked away with a handwritten receipt instead of a cash register receipt.
Reznikoff alleged that since checks for some items were never rung into the register, those amounts would appear as overages. According to Reznikoff, Wells would use a calculator at the cashier's counter to figure up the amount of checks she had collected which were not entered into the register. Reznikoff hypothesized that Wells would pocket an amount of money equal to the amount of sales which had not been recorded into the register at an appropriate time when no one was looking. Reznikoff played instances on the tape where Wells would give the customer an internal receipt but would not ring the sale on the register.
You notice she only hit the drawer with one click to open the drawer, which is not ringing a sale... . The no sale key. And there was no register receipt given to the customer, no receipt came up from the register, given to the customer.
MaLinda Wells did not take the stand to testify. Wells put on two character witnesses and then rested.
I. The trial court erred in allowing into evidence a summary of the business transactions of Toby's Toys which was not properly authenticated.
It is not completely clear what appellant's objection is in assignment I, although she does raise a garden variety of several points which will be addressed. Wells appears to be objecting to State's Exhibit # 2 which is a summary prepared by Mr. Reznikoff. This exhibit is a summary compilation from business records of Toby's Toys for a period of February 20  May 6, 1988. Due to the large volume of business records for this period, Reznikoff prepared the summary and testified from the data reflected therein. On appeal, Wells asserts in her brief that the summary was prepared by someone other than Reznikoff, "a girl." This assertion is unsupported in the record. According to the testimony in the record, the summary was prepared by Reznikoff with the assistance of his bookkeeper.
It represents a summary of some data from the company's records of which, as it was originally prepared, I reviewed the original preparation and went back and personally audited it to the individual detail tapes. I originally had a girl prepare it; I sat down with her and went over it, went over everything on the paper to make sure what she had done was done accurately. That summary was again summarized with human eye on a computer onto this document to make it clear and concise, but we can offer any other documents they wish to see.
Our rules of evidence, specifically Rule 1006, allow the use of business summaries when original records are too voluminous for practical use as evidence.
The contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation. The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at a reasonable time and place. The court may order that they be produced in court.
Comment
This rule represents a change in Mississippi practice. Rule 1006 refers to voluminous writings as well as recordings and photographs. Under the rule, a summary of the voluminous material is sufficient as admissible evidence. The underlying material need not be introduced simultaneously into evidence has been the practice in Mississippi. See Crawford v. State, 162 Miss. 158, 138 So. 589 (1932). The Mississippi court has treated the summaries as demonstrative tools rather than as evidence. Rule 1006 *275 provides that the summaries are clearly admissible as evidence, but requires that the underlying material be made available to the other parties for their examination.
M.R.E. 1006 & Comment. (Summaries).
The underlying records consisted of bank deposits, cash register tapes and daily accounting sheets used by Toby's Toys. All of these are business records prepared and utilized in the "regular conduct" of business. See M.R.E. 803(6) (Records of Regularly Conducted Activity Exception to Hearsay Rule).
Another argument which Wells makes is that the summary was not properly authenticated. This claim is without merit. Reference to M.R.E. 901 answers Wells' claim regarding authentication.
RULE 901. REQUIREMENT OF AUTHENTICATION OR IDENTIFICATION.
(a) General Provision. The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.
(b) Illustrations. By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule:
(1) Testimony of Witness With Knowledge. Testimony that a matter is what it is claimed to be.
M.R.E. 901.
The document was properly authenticated. Reznikoff was a witness with knowledge that the summary was what it was alleged to be. See M.R.E. 901(b)(1). As noted above, Mr. Reznikoff explained that he prepared the summary with the help of his bookkeeper, and his testimony reveals that he was a witness with knowledge that the summary was what it was claimed to be.
A. We went,  analyzed each individual date. We looked at the actual bank deposits which showed the actual checks that were deposited for the day; we were able to account for the checks representing the amount of checks being over; we could not find any amount of cash rung up. In a case where checks were recorded, we indicated that in the study, so that we were able to break out a total short over, an amount which was accounted for by cash register misrings, a check being rung as cash, a new shortage, which is an actual shortage that can't be accounted for, could have been giving a customer too much change or too little change,  and the other column represents the actual checks that we have for which there is no accountability on the detail tape which represents to me a theft of money.
In short, we find no problem with the authentication of State's Exhibit 2 as it was properly identified and authenticated by Reznikoff, a witness with knowledge in accordance with M.R.E. 901(b)(1).
Additionally, Wells' appellate counsel[2] claims that she was denied access to the business records of Toby's Toys from which the summary was prepared. Thus, Wells appears to be alleging a Rule 4.06 discovery violation. This claim by Wells is groundless and totally unsupported by the record.
The record reflects that the business records from which the summary was prepared were in the courtroom during the trial. Furthermore, the uncontradicted assertion in the record is that Wells' trial counsel was provided with the business records prior to trial pursuant to discovery. At the end of the first day of testimony, defense counsel asked if he could take the records home overnight. The court granted permission. In the following exchange, Mr. Geddie is the Assistant District Attorney, and Mr. Butts is Ms. Wells' trial counsel.
BY MR. BUTTS: ... We would also ask that the prosecution give us access to the underlying documents that Mr. *276 Reznikoff testified to, in the formulation of this summary.

BY THE COURT: All right, we will take them one at a time. What's the attitude of the State about reviewing the 
BY MR. GEDDIE: Your Honor, Mr. Butts has had it before. We have no objection to him having them again. We would ask that 
* * * * * *
BY THE COURT: When do you want to be able to examine the other material?
BY MR. BUTTS: Today, Your Honor. As I understand it is just in a box back in the DA's office.
BY THE WITNESS, MR. REZNIKOFF: No, I have got it here.
BY THE COURT: Boxes, here by the witness stand.
BY MR. BUTTS: Mr Reznikoff has it? If that is made available to me, I will deliver it, return it to whoever it needs to be.
BY THE COURT: All right, I am going to have to depend on Mr. Reznikoff to get this to you, and it will be, of course, outside the presence of the Court, unless you want me to sit here and watch it. And the Court Reporter will stay around to take care of that which is in her custody.
(emphasis added).
There was no allegation of discovery violation by Mr. Butts, trial counsel, because none existed. Mr. Butts merely desired to examine the accounting documents overnight before he began his cross-examination of Reznikoff the next morning. Mr. Geddie had no objection to this, and when Mr. Geddie remarked in passing that Mr. Butts had had the documents before, Mr. Butts registered no contradiction, nothing. Even if one accepts appellate counsel's veiled claim of discovery violation, there is no record of an objection, and the point would not be preserved for appeal. Dodson v. State, 494 So.2d 575 (Miss. 1986); Johnson v. State, 475 So.2d 1136 (Miss. 1985); Robinson v. State, 345 So.2d 1044 (Miss. 1977).
II. The court erred in allowing into evidence a videotape without the establishment of the proper chain of custody.
Contrary to Wells' assertion, the chain of custody was established at trial. Officer Harold Chaffin of the Tupelo Police Department established the chain of custody.
Q. I hand you what's been marked as State's Exhibit # 1, for identification, and ask you to take the tape out of there, if you would, and examine the tape, please, and tell the ladies and gentlemen of the jury if you see any distinguishing marks on the tape.
A. Yes, sir, my initials `HWC' are on there, along with the date that I first received the tape from personnel at Toby's Toys.
Q. Ok. If you would, hold it up. Where did you actually put your initials on that tape?
A. Ok, I placed my initials right in the very corner there `HWC' and the date `5-7-88' and then `HWC' below that.
Q. Do you recognize those initials as being your own?
A. Yes, sir, that's my writing.
Q. That is your handwriting?
A. Yes, sir.
Q. Officer Chaffin, whose custody  in whose custody has this tape been since that time?
A. Well, the tape was originally kept by me, until the day before the preliminary hearing date on June 21, 1988. At that time it was given to Mr. Reznikoff, the owner of Toby's Toys. He maintained custody of it for approximately twenty-four hours so that he could make a copy of the tape, and then, after the preliminary hearing on the 22nd, he gave me the tape back. I maintained custody of the tape again until the grand jury met in August of 1988, and after the grand jury heard the case, it was then given back to Mr. Reznikoff.
Q. I take it the tape was shown to the grand jury?
A. I understand that it was.
Q. So you turned the tape over to Mr. Reznikoff for presentation to the grand jury?

*277 A. Yes, sir.
Q. And when did he give the tape back to you?
A. He took the tape with him, and he gave the tape to the district attorney's office at an undetermined time. It remained in the custody of the district attorney's office until last Friday, March 2nd, and it was returned back over to me and it was placed in the Tupelo Police Department vault until this morning when I checked it back out and brought it here.
The trial judge ruled that the chain of custody had been established.
The test for chain of custody is to ascertain whether there is any indication of tampering or substitution of evidence. Gibson v. State, 503 So.2d 230, 234 (Miss. 1987); Grady v. State, 274 So.2d 141, 143 (Miss. 1973). Decisions on chain of custody are "largely left to the discretion of the trial court." Doby v. State, 532 So.2d 584, 588 (Miss. 1988); Morris v. State, 436 So.2d 1381 (Miss. 1983).
There is no indication, not so much as a suggestion, that the tape had been tampered with in any way. The officer testified that he viewed the tape in its entirety on the day prior to trial and found the tape to be in the same condition as it was originally. There was nothing wrong with the tape, and there had been no changes. Consequently, there was no abuse of discretion by the trial court in finding that the chain of custody had been properly established.
Regarding authentication of the tape, Wells is correct in citing Barham v. Nowell, 243 Miss. 441, 448, 138 So.2d 493, 493 (1962). A videotape may be authenticated by someone familiar with the scene. This person does not have to be the photographer. See Jackson v. State, 483 So.2d 1353, 1355 (Miss. 1986) (no requirement that photographer testify where there is other competent testimony that photograph represents what it purports to be). In the case at bar, both Mr. Reznikoff and Officer Chaffin testified that the videotape scene was what it purported to be, MaLinda Wells working the cashier's counter at Toby's Toys in Tupelo on the day in question. See also M.R.E. 901(b)(1) (authentication by testimony of witness with knowledge).
III. The court erred in allowing the prosecution to select certain portions of the video tape for viewing by the jury to the exclusion of all other portions of the video tape.
For the third assignment of error, Wells complains that only certain portions of the video were shown to the jury during trial. Wells argues that the jury should have watched the entire four hour tape of Wells' shift.
The State notes that it was attempting to keep the case simple by not forcing the jury to watch "four hours of soundless videotape, the majority of which is just Wells standing at her cash register." Additionally, the State notes that the defense had opportunity to show whatever it desired of the tape.
The Defense had seen the tape prior to the trial (Tr. 62, 99) and if it was believed that certain other portions of the tape would have rebutted the `incriminating' portions, then the Defense would certainly have been permitted to show them to the jury.
Further, this record reflects that the jury had access to all of the videotape during its deliberation of the verdict.
As the State notes, Wells cites no authority for her argument for this assignment of error. See Brown v. State, 534 So.2d 1019 (Miss. 1988); Clark v. State, 503 So.2d 277 (Miss. 1987); Kelly v. State, 463 So.2d 1070 (Miss. 1985); Redmon v. State, 457 So.2d 1344 (Miss. 1984). Significantly, she makes no claim under M.R.E. 106 (rule of completeness),[3] and she makes no claim that showing only selected portions of the *278 tape was misleading for the jury. Wells' complaint is merely that the jury was not required to watch the entire four hour tape, period. Furthermore, a reading of the record reveals that the jury saw other portions of the tape which were not related to the charge in the indictment. Clearly, there was no abuse of discretion by the trial judge's refusal to make the jury a captive audience for four hours of videotape, much of it consisting of Wells standing at a store counter reading a magazine, applying lotion to her legs, or various other activities to pass the time of day in between customers.
IV. The trial court erred in allowing the testimony of Robert Reznikoff wherein Reznikoff was permitted to state his opinions and interpretations of the defendant's actions depicted upon the videotape which pertained to the ultimate issue of fact before the jury.
During Reznikoff's testimony, he described Wells' job activities as the videotape was played for the jury. The Court has viewed the tape, and we find that much of Reznikoff's testimony was merely a factual description of what the jury was viewing. At this point in the trial, the videotape had been authenticated and admitted into evidence, and it is well settled that a sponsoring witnesses' description of evidence poses no evidentiary problem for admissibility. However, this is not to say that there is a carte blanche license for a sponsoring witness who takes the stand to describe evidence.
We take a closer look at this issue beginning with a detailed look at M.R.E. 701 and its comment. M.R.E. 701 provides as follows:
RULE 701. OPINION TESTIMONY BY LAY WITNESSES
If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to the clear understanding of his testimony or the determination of a fact in issue.
COMMENT
The traditional rule regarding lay opinions has been, with some exceptions, to exclude them from evidence. Rule 701 is a departure from the traditional rule. It favors the admission of lay opinions when two considerations are met. The first consideration is the familiar requirement of first-hand knowledge or observation. The second consideration is that the witness' opinion must be helpful in resolving the issues. Rule 701, thus, provides flexibility when a witness has difficulty in expressing himself in language which does not reflect an opinion. Rule 701 is based on the recognition that there is often too thin a line between fact and opinion to determine which is which.
M.R.E. 701 & Comment.
As the comment to M.R.E. 701 explains, there is a two-part prerequisite test for the admissibility of lay witness opinion testimony. First, the information must assist the trier of fact; and second, the opinion must be based on first-hand knowledge. Our prior cases have emphasized that there is no substitute for either requirement. See Roberson v. State, 569 So.2d 691 (Miss. 1990); Rose v. State, 556 So.2d 728 (Miss. 1990); Jackson v. State, 551 So.2d 132 (Miss. 1989); Whittington v. State, 523 So.2d 966 (Miss. 1988).
In the course of describing events on the videotape, Reznikoff injected opinion testimony of how Wells' operation of the cash register deviated from standard procedure.
She is putting an item in the bag for a customer, taking some money, ringing the drawer, putting that money in the drawer, and now, she didn't close the drawer, you noticed, which right after that the drawer should have been closed, right at that point she should have closed the drawer. ...
* * * * * *

Now there is no excuse in a retail business at any time for the clerk, without a customer there, to open the drawer, take cash out, count it, and take it out *279 of the register, shut the drawer and walk away with the cash.

Reznikoff was not qualified by the court as an expert in the retail business. See M.R.E. 702. His opinion is only admissible then, if at all, under M.R.E. 701.
Clearly, Reznikoff's opinion was not admissible under M.R.E. 701. First of all, Reznikoff was not at the store on the day that the tape of Wells was made. Consequently, Reznikoff was not, and is not, a witness with first-hand knowledge of the events depicted on the tape. The requirement of personal knowledge as a prerequisite to lay opinion testimony is absolute. In Roberson v. State, 569 So.2d 691, 694 (Miss. 1990), this Court commented on the necessity of first hand observation:
The first prong of the test requires that the lay witness have first-hand knowledge or observation. This language is directed at a witness who was actually at the scene of the crime or accident. There is no question but that Officer Gardner did not see appellant in the store or touch the counter. Lay witnesses are permitted to give opinions, if based on the perception of the witness and helpful to a clear determination of a fact in issue... .

Roberson, 569 So.2d at 694-95.
Second, the State argues that Reznikoff's years of experience in the retail business and his knowledge of the operation of cash registers was necessary and helpful in enabling the jury to understand the evidence. We have no reason to doubt that this is true. However, if particular knowledge of the retail business is necessary to assist the trier of fact in understanding the events depicted on the videotape, then such testimony would never qualify as a lay witness opinion under M.R.E. 701. The proper avenue of admissibility in that case would have to involve qualification of the opinion as "expert" pursuant to M.R.E. 702. A layperson is qualified to give an opinion because he has first-hand knowledge which other laypeople do not have. According to Wigmore, a lay witness opinion comes from one who concededly has no greater skill than a juror in drawing inferences from the evidence in question. 7 Wigmore, Evidence § 1924 (1978). By comparison, the expert has "something different" to contribute. 3 McCormick on Evidence 33 (E. Cleary ed. 1984). For example, Reznikoff's knowledgeable testimony regarding the retail business and the standard operating procedures of cash registers was "something different" requiring M.R.E. 702 qualification as expert testimony and opinion.
As noted above, much of Reznikoff's testimony concerned descriptions of events which can clearly be seen on the videotape. This brings us to our next point. The witness should not tell the jury what they can clearly see for themselves on the tape, as Reznikoff did. It naturally follows that if the jury can clearly see for themselves and if the witness is in no greater position to relate what is depicted by personal observation of the events, then his opinion is not one which is helpful to the trier of fact.[4]See M.R.E. 701 & Comment. Furthermore, Reznikoff also describes instances wherein he alleges that Wells is pocketing cash from the register. These scenes cannot be viewed on the tape since Wells is turned away from the camera. Once again, Reznikoff is offering impermissible opinion testimony that Wells is pocketing the money. Since Reznikoff had no first-hand, personal observation of Wells' activities on May 6, 1988, such opinion testimony likewise fails the first prong of the Rule 701 test and should not have been allowed into evidence. The testimony where Wells' activities are not in the camera's view is highlighted in italics:
Now, she folded it over, shut the drawer, and walked away with the money in her left hand. There are some people here, appears to me she didn't put the money in her pocket,  I think it is still folded in her left hand. Now, you notice here *280 is where the hand went into the pocket. That was the first instance.

Ok, now she is opening the drawer and taking some money out. You can see she is counting it. There is no customer here; she just opened the drawer with a single stroke, and she walked away with the money and puts it in her apron, away from the register. .. . Now there is no excuse in a retail business at any time for the clerk, without a customer there, to open the drawer, take cash out, count it, and take it out of the register, shut the drawer and walk away with the cash.
The customer must be getting her change out or something. It looks like they have got the  she is now taking a bag out to bag the item; looks like some little childrens' bracelets. The customer tendered some cash for the sale. She is reaching in her pockets there and looking for some check amounts. Now she opened the drawer, she put something in  counting change from the customer, put the money,  now the customer has gone away; she is counting some cash, put some in the register, took some more out of the register, closed the drawer, took the money in her hands, turns around to the back, and there the money is going into the pocket of her apron at that point.

Finally, we have isolated and reviewed the erroneous testimony in considerable detail, and we conclude that considering the totality of the evidence presented in this case,[5] the error was, at best, harmless. See Holland v. State, 587 So.2d 848, 865 (Miss. 1991); Whitley v. State, 511 So.2d 929, 932 (Miss. 1987); Griffin v. State, 504 So.2d 186, 190 (Miss. 1987); Giles v. State, 501 So.2d 406, 408 (Miss. 1987). Consequently, we find that Wells' appeal presents no issues which warrant reversal of her conviction for embezzlement. It follows then that Wells' conviction and sentence of five years to the custody of the Mississippi Department of Corrections is affirmed.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, ROBERTSON, PITTMAN and BANKS, JJ., concur.
McRAE, J., concurs in result only.
SULLIVAN, J., dissents with separate written opinion.
SULLIVAN, Justice, dissenting:
I believe the Fourth Assignment of Error was well taken. We put great stock (perhaps too much) in the testimony of an eyewitness. Reznikoff told the jury what the jury could clearly see for themselves. The power of suggestion may easily overcome the naked eye. It is not uncommon that an audience may be convinced by a narrator that they are not seeing what they actually are seeing.
I completely agree with the majority that there are pitfalls to this method which should be avoided. They not only should be, they can be. Rather than announce that a witness should not tell the jury what they can clearly see for themselves on the tape, this Court need only announce that a witness may not. That done, no pitfall. I dissent.
NOTES
[1] It was not Reznikoff's policy to use surveillance cameras and videotape equipment in his business. Reznikoff took over the store location from Howard Brothers, a chain store which had surveillance cameras in place. One such camera was pointed at the cashier's counter; and based on the advice from the police detective, Reznikoff decided to tape one of Wells' five hour shifts.
[2] At trial, Ms. Wells was represented by Mr. David Butts of Tupelo. For her appeal, Ms. Wells has new counsel, Mr. Joseph C. Langston of Booneville.
[3] When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require him at that time to introduce any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it.

M.R.E. 106.
[4] Each case must be evaluated on its own facts. In another case wherein the sponsoring witness has first-hand, personal observation of the events depicted on a videotape, such testimony may indeed be helpful to the trier of fact.
[5] In addition to the videotape, the financial documentation which was entered into evidence in this case supported the jury's verdict of guilty.