**6/3/97**

IN THE COURT OF APPEALS

OF THE

STATE OF MISSISSIPPI

NO. 94-KA-00879 COA

JORGE RAMOS A/K/A JORGE ANTONIO RAMOS

APPELLANT

v.

STATE OF MISSISSIPPI

APPELLEE

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND

MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-B

TRIAL JUDGE: HON. JAMES W. BACKSTROM

COURT FROM WHICH APPEALED: CIRCUIT COURT OF JACKSON COUNTY

ATTORNEY FOR APPELLANT:

MICHAEL W. CROSBY

ATTORNEY FOR APPELLEE:

OFFICE OF THE ATTORNEY GENERAL

BY: DEIRDRE MCCRORYDISTRICT ATTORNEY: KEITH MILLER

NATURE OF THE CASE: CRIMINAL: FELONY POSSESSION OF MARIJUANA WITH INTENT

TRIAL COURT DISPOSITION: POSSESSION OF CONTROLLED SUBSTANCE WITH INTENT; SENTENCED TO SERVE 15 YEARS IN THE MDOC AND PAY FINE OF $10,000

MOTION FOR REHEARING FILED:6/18/97

CERTIORARI FILED: 10/31/97

BEFORE BRIDGES, C.J., HERRING, AND PAYNE, JJ.

PAYNE, J., FOR THE COURT:

Jorge Ramos was convicted of possession of a controlled substance with intent to distribute. The trial court sentenced Ramos to serve a term of fifteen (15) years in the custody of the Mississippi Department of Corrections and ordered him to pay a fine in the amount of $10,000. The trial court denied Ramos's motion for JNOV or, in the alternative, a new trial. We find that none of Ramos's issues on appeal has merit and therefore affirm.

## FACTS

On January 30, 1993, Jorge Ramos and his family were traveling Highway I-10 through Jackson County, Mississippi, when his vehicle was stopped by Deputy Randy Bosarge of the Jackson County Sheriff's Department. Deputy Bosarge testified that he initially stopped Ramos for changing lanes without signaling and because one of the tires on Ramos's vehicle was wobbling. Bosarge indicated that he ran a check on Ramos's driver license and while waiting for the information to be processed he retrieved his K-9 dog from the car and then walked the dog around Ramos's vehicle. Bosarge testified that the dog immediately alerted to a rear portion of the car. Bosarge stated that Ramos, upon being questioned about the possible presence of narcotics in the vehicle, indicated that there were no drugs in the car and permitted Bosarge to search the vehicle. Bosarge testified that his search revealed a specially constructed compartment underneath the body of the car. At this point, Bosarge testified that he placed Ramos under arrest and called for backup. A short time later, Case Investigator Donald Bourgeois arrived at the scene, and the car was taken to a nearby shop where it could be inspected. Further investigation revealed approximately thirty-seven (37) pounds of marijuana concealed underneath the body of the car.

Bourgeois testified that Ramos made a statement explaining how the marijuana was packaged and concealed in the car. Bourgeois stated that Ramos indicated that his wife knew nothing about the marijuana, and he took full responsibility for hiding it in the car. Ramos testified at trial in his own behalf and denied making any such statements.

The jury subsequently convicted Ramos for possession of a controlled substance with intent to distribute. Feeling aggrieved, Ramos raises three issues on appeal alleging that (1) the State violated the rules of discovery, (2) the State was allowed to solicit expert testimony from a witness without being required to qualify him as an expert, and (3) the State failed to show a proper chain of custody for the marijuana seized in this case.

## ANALYSIS

## I. DID THE TRIAL COURT ERR IN FAILING TO GRANT A MISTRIAL WHEN THE STATE VIOLATED DISCOVERY RULES BY INTRODUCING MULTIPLE INCULPATORY STATEMENTS AND DOCUMENTS WHICH HAD NOT BEEN PROVIDED TO THE DEFENSE THROUGH DISCOVERY?

Ramos asserts three discovery violations:

(1) <u>STATEMENTS MADE BY RAMOS</u>. Deputy Bosarge testified that Ramos stated to him on the roadside that there was forty (40) to fifty (50) pounds of marijuana in the car. Ramos takes issue with this testimony because Deputy Bosarge made no mention of this statement in his narrative report. Ramos asserts that the only mention of any statement by Ramos concerning the amount of marijuana in the car was contained in Investigator Bourgeois's report which indicated that Deputy Bosarge was told by Ramos that there was *fifty* pounds of marijuana in the car. Ramos alleges that the testimony of both Bosarge and Bourgeois was a material departure from the statement provided to the defense through discovery in that the officers testified that Ramos stated that there was "*forty to fifty"* pounds of marijuana in the car instead of *fifty* pounds as indicated by Bourgeois's report.

Bourgeois also testified that Ramos told him that he had the car altered in order to hide the marijuana and that Ramos further indicated that Mrs. Ramos was unaware of the marijuana being in the car. Ramos contends that this information was not contained within Bourgeois's report nor was it provided to him through discovery. Bourgeois, however, testified that he told Ramos's attorney about these statements. Ramos denies making the statements and his attorney denies that Bourgeois ever told him about the incriminating statements.

(2) <u>ORDER TO DESTROY EVIDENCE</u>. Bourgeois testified that the marijuana seized from Ramos's car had been destroyed because he thought that Ramos's previous statements concerning the marijuana amounted to a confession and that there would be no trial. The State attempted to introduce into evidence the document authorizing the destruction of the marijuana, but the judge refused to allow it. Ramos alleges that failure to provide the documentation prior to trial violated the rules of discovery and that the trial court should not have allowed Bourgeois the opportunity to explain why the evidence could not be produced at trial.

(3) <u>BILL OF SALE</u>. Ramos contends that the State, in an effort to contradict Mrs. Ramos's testimony regarding the purchase of the vehicle in which they were riding at the time of the arrest, ambushed the defense with new documents which it previously claimed that it did not have in its possession. These new documents contained the name of the seller of the vehicle, the date of the sale, and the amount of the sale.

Ramos argues that Rule 4.06The current version of this rule is contained at Rule 9.04 of the Uniform Rules of Circuit and County Court Practice. of the Uniform Criminal Rules of Circuit Court Practice requires that the above information be provided to the defense in discovery. Ramos contends that the State was in direct violation of the discovery rules in failing to provide pertinent information to him prior to trial and that such failure prevented him from preparing an adequate defense. Ramos cites *Box v. State*, 437 So. 2d 19, 23 (Miss. 1983) (Robertson, J., specially concurring), as support for his allegation that he was entitled to a "mistrial/continuance."

Ramos is correct in that *Box v. State* and progeny provide guidelines for trial judges in dealing with violations of discovery. *See also Roberson v. State*, 595 So. 2d 1310, 1316 (Miss. 1992). The Mississippi Supreme Court has set forth the following procedures for the trial court to follow when faced with a discovery violation:

1) Upon defense objection, the trial court should give the defendant a reasonable opportunity to

become familiar with the undisclosed evidence by interviewing the witness, inspecting the physical evidence, etc.

2) If, after this opportunity for familiarization, the defendant believes he may be prejudiced by lack of opportunity to prepare to meet the evidence, he must request a continuance. Failure to do so constitutes a waiver of the issue.

3) If the defendant does request a continuance the State may choose to proceed with trial and forego using the undisclosed evidence. If the State is not willing to proceed without the evidence, the trial court must grant the requested continuance.

*Roberson*, 595 So. 2d at 1316.

In the present case, Ramos's attorney moved for a mistrial instead of requesting a continuance as specified under the *Box* guidelines. *Id.* However, our case law indicates that a motion for a mistrial will suffice to preserve the issue for appeal. *West v. State*, 553 So. 2d 8, 18 n.6 (Miss. 1989). Procedurally, Ramos did everything he was supposed to do in addressing an alleged discovery violation and perhaps a continuance should have been granted. Nevertheless, we find that the assigned errors, if errors at all, do not warrant reversal.

Ramos first takes issue with testimony regarding statements that he allegedly made to police officers at the time of his arrest regarding the quantity of marijuana that was in the car. While the testimony of Officers Bosarge and Bourgeois differed from facts found in the police report, we find that such inconsistency does not rise to the level of being a discovery violation. If anything, it would seem that the discrepancy between the quantity of marijuana to which the officers testified and the quantity listed in the police report merely provided the defense with an excellent opportunity to impeach the officers' testimony.

Ramos next complains about testimony in which Officer Bourgeois indicated that Ramos admitted that he had altered the car in order to hide the marijuana. While oral statements made by a defendant to a law enforcement officer are discoverable, *Nixon v. State*, 533 So. 2d 1078, 1089 (Miss. 1987), we cannot assign error to the omission of such information from discovery if it was not requested. *McCaine v. State*, 591 So. 2d 833, 835 (Miss. 1991) ("With regard to issues involving alleged discovery violations, the discovery request must be made in writing in order to be enforceable under Rule 4.06 of the Uniform Rules of Circuit Court Practice."). Granted, Ramos did submit a written motion for discovery in which he requested many things. However, after careful review of this motion, we find no request for oral statements made by the defendant nor does Ramos ask to be informed of the substance of any testimony the State intends to present. Ramos requests the names and addresses of all the State's witnesses but not the substance of their testimony. Ramos also requests a copy of any *recorded* statements of the defendant but nowhere does he request oral statements.

The next discovery violation alleged by Ramos involves the order to destroy evidence. We note that the judge did not allow the order to be admitted into evidence because it was not provided in discovery. The judge did allow Bourgeois to explain the absence of the marijuana to which Ramos also objected. Again, we find no basis for reversal. The marijuana was not destroyed until it had been submitted to the crime lab where it was weighed and tested. Documentation and testimony regarding

the testing was provided at trial by the State. The fact that the marijuana had been destroyed is not significant, and we can find no prejudice in allowing Bourgeois testimony regarding the destruction. The fact that marijuana was taken from Ramos's car has never been in dispute. Ramos's defense was that he did not know the marijuana was in the car. Clearly, any arguable error in this instance is harmless in light of the overwhelming evidence of guilt.

Ramos's final complaint involves the bill of sale for the car in which he was driving. Ramos claims that he was surprised when the State produced this document at trial because the State had previously informed him that they did not have any documents pertaining to the sale of the car. While the State should have provided the documents in discovery and the judge should have granted Ramos a continuance, the error is harmless. The Mississippi Supreme Court has stated on numerous occasions that the purpose of Rule 4.06 is "to avoid unfair surprise to either the state or the defendant at trial." *Ghoston v. State*, 645 So. 2d 936, 939 (Miss. 1994). Certainly, Ramos cannot claim surprise as the registration of the car was taken from his personal possessions. Ramos's surprise was that the State found the public record to which there could be no rebuttal even if the Appellant had been "noticed" with the information on discovery.

We find that Ramos's arguments are without merit.

## II. DID THE TRIAL COURT ERR IN ALLOWING DEPUTY BOSARGE TO TESTIFY AS A LAY WITNESS INSTEAD OF REQUIRING THE STATE TO QUALIFY BOSARGE AS AN EXPERT?

Ramos contends that the trial court committed reversible error in allowing Deputy Bosarge to testify, in the form of lay opinion, as to the following: (1) the street value of marijuana, (2) that tar is used by drug smugglers to disguise the smell of marijuana, (3) that the packaging used in this case was the typical mechanism for smuggling, and (4) that the marijuana seized in this case appeared to be "fresh." Ramos argues that all of the above statements were based on Bosarge's training and experience as a deputy sheriff and therefore, could not be classified as lay opinion.

The State argues that, in light of Ramos's overwhelming guilt, the introduction of Deputy Bosarge's opinions under the auspices of Mississippi Rule of Evidence 701 was harmless at worst. We agree. The State also correctly points out that Ramos's reliance on *Sample v. State*, 643 So. 2d 524 (Miss. 1994), to support his argument for reversal, is misplaced. In *Sample*, the supreme court held that the trial court committed reversible error in allowing inadmissible hearsay. *Id.* at 528-29. The court went on to hold that opinion testimony by a police officer based on his professional experiences and training was expert testimony which should have been admitted pursuant to Mississippi Rule of Evidence 702, and which should have been disclosed to the defense prior to trial. *Id.* The court then instructed the trial court to follow the Rule 702 procedures with regard to this witness "on retrial." *Id.* It is significant that *Sample* was reversed not on this issue, but on the question of the introduction of inadmissible hearsay. We agree with the State's argument that *Sample* does not mandate the reversal of this case.

Ramos, as a supplement to his Appellant's brief, provides us with a copy of *Couch v. City of D'Iberville, Miss.*, 656 So. 2d 146 (Miss. 1995). This case is similar to *Sample* in that the supreme court recognized that a police officer's testimony based on knowledge acquired through professional training and experience falls under Rule 702 of the Mississippi Rules of Evidence. *Id.* at 153. Here, as

in *Sample*, the *Couch* court reversed on an issue other than a Rule 702 violation but does instruct the trial court, on remand, to admit the testimony of the police officer only if he is properly qualified as an expert witness. *Id.* We find that *Couch* also does not mandate reversal of this case.

In the present case, we believe that Deputy Bosarge should have been proffered as an expert and therefore, qualified as such before being permitted to testify. *See Seal v. Miller,* 605 So. 2d 240, 244 (Miss. 1992) (calling on a police officer to respond a question based on his experience as an officer investigating accidents is by definition not a lay opinion). The error, however, is negligible in light of the fact that Ramos was arrested while driving a vehicle containing thirty-seven pounds of marijuana. We therefore find that reversal is not required in this instance.

## III. DID THE TRIAL COURT ABUSE ITS DISCRETION IN ACCEPTING THE STATE'S PROOF OF THE CHAIN OF CUSTODY OF THE MARIJUANA?

Ramos contends that the State failed to establish a proper chain of custody in light of the fact that the marijuana allegedly seized from Ramos's vehicle had been destroyed by the Sheriff's Department. Ramos argues further that the chain of custody for the evidence submission form used by Investigator Bourgeois in submitting the evidence to the crime lab for testing was also not properly established and should not have been admitted into evidence. Ramos contends that the possibility of a mix-up of the evidence in this case is obvious. As a result, Ramos argues that his conviction should be reversed and rendered.

In the present case, Investigator Bourgeois testified that he authorized the destruction of the marijuana seized from Ramos's car because of a mistaken belief that Ramos's statements to him shortly after Ramos's arrest constituted a confession and that, as a result of this admission of guilt, there would be no trial. We find that the destruction of the evidence prior to trial does not require reversal in this case. The Mississippi Supreme Court has held that the destruction or loss of evidence prior to trial does not necessarily warrant a reversal if the State can show that "it has acted reasonably and in good faith" in the handling of the evidence. *Coyne v. State,* 484 So. 2d 1018, 1021 (Miss. 1986). We find nothing in the case to show that the destruction of the marijuana was anything more than the mistaken belief on the part of Investigator Bourgeois that the case would not go to trial. We note that the evidence was destroyed only after it had been tested by the Mississippi Crime Lab and that the State was able to produce an evidence submission form and testimony by the evidence technician who received the marijuana, as well as testimony from the crime lab analyst who tested it.

We find further that the chain of custody for the evidence submission form was properly established. The Mississippi Supreme Court has held that the test for chain of custody is "whether there is any indication of tampering or substitution of evidence." *Wells v. State*, 604 So. 2d 271, 277 (Miss. 1992). Furthermore, the State does not have to produce every person who handled the evidence, nor does the State have to account for every minute of every day. *Butler v. State*, 592 So. 2d 983, 985 (Miss. 1991).

In the present case, Investigator Bourgeois testified that he took the marijuana from Ramos's car and kept it under lock and key until such time as he turned it over to the Gautier Police Department's evidence technician, Lula Ryan. Lula Ryan testified that she did in fact receive the marijuana seized in this case and transported it to the crime lab for testing. Both Bourgeois and Ryan identified the

evidence submission form and testified that the form contained their signatures indicating that Ryan was the agent delivering the marijuana to the crime lab and that Bourgeois was the "requesting officer" which meant that he was the officer to whom the marijuana was to be returned following testing. Ryan testified further that the evidence submission form was used as a part of standard operating procedure and that a form was filled out every time she received evidence that needed to be transported to the crime lab.

Next, the State presented the testimony of Tim Gross, a forensic chemist with the Mississippi Crime Lab, who testified that he tested the marijuana submitted with the evidence submission form and that he prepared a report containing the results of his tests. These results indicated that the evidence submitted was in fact marijuana and that it weighed approximately thirty-seven pounds. Mr. Gross testified that he knew that the results contained in his report pertained to the marijuana in Ramos's case because the evidence submission form and all subsequent forms prepared following the examination of the evidence contained a laboratory case number which is assigned to every piece of evidence that is received by the crime lab. Mr. Gross testified further that the laboratory case number on his report containing the results of his examination of the marijuana and the laboratory case number on the evidence submission form were identical.

There was no showing by Ramos that the evidence recovered from his vehicle was not what it was purported to be, nor was there any indication that the evidence had been tampered with or altered prior to or during the examination by the crime lab. The decision of whether the State has properly shown the chain of custody of evidence is left to the discretion of the trial court. *Wells*, 604 So. 2d at 277. This Court will not reverse the trial court's ruling "absent abuse resulting in prejudice to the defendant." *Gibson v. State*, 503 So. 2d 230, 233 (Miss. 1987). We find no abuse of discretion in this instance and therefore affirm the decision of the trial court.

**THE JUDGMENT OF THE CIRCUIT COURT OF JACKSON COUNTY OF CONVICTION OF POSSESSION OF A CONTROLLED SUBSTANCE WITH INTENT TO DISTRIBUTE AND SENTENCE OF FIFTEEN (15) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND FINE OF $10,000 IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE TAXED TO THE APPELLANT.**

**BRIDGES, C.J., McMILLIN AND THOMAS, P.JJ., COLEMAN, DIAZ, HERRING, HINKEBEIN, KING, AND SOUTHWICK, JJ., CONCUR.**