879 So.2d 1062 (2004)
John D. RATLIFF a/k/a "Black", Appellant
v.
STATE of Mississippi, Appellee.
No. 2003-KA-01799-COA.
Court of Appeals of Mississippi.
August 3, 2004.
*1063 Allan D. Shackelford, attorney for appellant.
Office of the Attorney General by Jean Smith Vaughan, attorney for appellee.
Before KING, C.J., LEE and GRIFFIS, JJ.
LEE, J., for the Court.

FACTS AND PROCEDURAL HISTORY
¶ 1. On December 9, 2002, Debra Durham was working at the Tobacco Superstore in Clarksdale, Mississippi. Around five o'clock p.m., she was restocking cigarettes in the back area of the store. Another employee named Sylvia Wood joined Debra in the back of the store and asked her if a man had paid her for three cartons of Newport cigarettes. Durham responded that she had not participated in the transaction. Pamela Farmer, the store manager, who was not present in the store at the time of the alleged shoplifting, was notified. Farmer reviewed the store's surveillance tape, which records activities at the register, in the back office, and in the store. The tape had recorded a black man in a checkered coat as he grabbed three cartons of Newport cigarettes. The man proceeded towards the counter and bypassed the clerk, who was assisting another customer. The man jogged out of the store, holding the three cartons in his arm.
¶ 2. On December 18, John D. "Black" Ratliff went to the Tobacco Superstore. Farmer identified Ratliff as the man from the tape because he was wearing the same pants, jacket, hat and shoes as the man on the videotape. Additionally, Ratliff, like the man in the videotape, had gray hair "all the way down his face under his chin." Farmer asked Ratliff to leave the store because he had been caught shoplifting. Ratliff exited the store, and Farmer called the police. Shortly thereafter, Ratliff was arrested for shoplifting. On July 17, 2003, Ratliff was found guilty of felony shoplifting pursuant to Mississippi Code Annotated Section 97-23-93 (Supp.2003), because he had two prior shoplifting convictions. Ratliff was sentenced by the trial court to serve five years as a habitual offender in the custody of the Mississippi Department of Corrections. It is from this conviction that Ratliff now appeals, raising the following three assignments of error:
I. THE TRIAL COURT COMMITTED ERROR IN ALLOWING COMMENTARY BY A WITNESS *1064 CONCERNING A VIDEOTAPE OF THE SHOPLIFTING
II. THE EVIDENCE IS INSUFFICIENT TO SUSTAIN A VERDICT OF GUILTY
III. THE JURY VERDICT IS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.
¶ 3. Finding these assignments of error to lack merit, this Court affirms the verdict of the trial court.

DISCUSSION OF ISSUES

I. DID THE TRIAL COURT ERR IN ALLOWING CERTAIN TESTIMONY CONCERNING A VIDEOTAPE OF THE SHOPLIFTING?
¶ 4. Ratliff presents two arguments regarding the surveillance tape. First, the trial court erred in allowing Farmer, the store manager, to identify Ratliff as the man in the videotape and second, the trial court erred in allowing Farmer and Durham to testify as to what the man in the videotape was doing.

1. Did the trial court err in allowing Farmer to identify Ratliff as the man in the surveillance tape?
¶ 5. Any opinion offered by Farmer, as a lay witness, must necessarily meet the requirements of Mississippi Rule of Evidence 701. Rule 701 permits the introduction of non-expert opinion evidence if "(a) [the opinion is] rationally based on the perception of the witness and (b) [is] helpful to the clear understanding of ... the determination of a fact in issue." M.R.E. 701. The Mississippi case which deals with the admission of lay witness opinions concerning the identity of a person in a videotape is Bennett v. State, 757 So.2d 1074 (Miss.Ct.App.2000). Bennett dealt with a mother's testimony that her son was not the individual portrayed in a videotape of a drug transaction. Citing U.S. v. Jackman, 48 F.3d 1, 4-5 (1st Cir.1995), this Court determined that such opinion evidence could be helpful to the trier of fact.
However, in a well-reasoned opinion, the United States Court of Appeals for the First Circuit concluded that such evidence ought to be admitted in any circumstance where it can be demonstrated that the witness has a greater familiarity with the defendant's appearance than the jury could possess and the recorded likeness is not either (a) so unmistakably clear, or (b) so hopelessly obscured, that the witness is no better suited than the jury to draw a meaningful conclusion as to the identity of the person depicted.
Bennett, 757 So.2d at 1076(¶ 7).
¶ 6. This Court reasoned that because the mother was familiar with her son's appearance and there was a legitimate issue of identification "[t]hat is the very circumstance in which opinion evidence may properly be received from witnesses who, by their previous acquaintance with the appellant, have some greater ability to identify him in a photograph or videotape than would a typical juror having no previous involvement with the appellant." Id. at 1077(¶ 8).
¶ 7. This case is clearly differentiated from the facts in Bennett; however, the logic espoused therein still appliesthat Farmer's face-to-face confrontation with Ratliff could render greater familiarity with Ratliff than the jury possesses. Farmer testified that Ratliff wore the same coat, shoes, pants and hat as the man in the videotape. Farmer also testified that she also recognized his facial features, including gray hair "all the way down his face under his chin." Having reviewed the videotape of the shoplifting, this Court is of the opinion that the video is neither unmistakably clear or hopelessly obscured, *1065 and due to Farmer's personal observation of and confrontation with Ratliff, she clearly possessed a greater familiarity with Ratliff than the jury. Accordingly, under Mississippi Rule of Evidence 701 and Bennett, the trial court did not err in admitting Farmer's opinion testimony that Ratliff was, indeed, the man in the video.

2. Did the trial court err in allowing Farmer and Durham to opine as to what the suspect in the videotape was doing?
¶ 8. Both the State and Ratliff cite Wells v. State, 604 So.2d 271 (Miss. 1992), in support of their arguments regarding both Farmer's and Durham's opinions of what was being viewed in the videotape. In Wells, an employee was tried for embezzlement. The employee's actions were recorded on a surveillance tape, and at trial the store owner testified to Wells' actions as the tape played for the jury. The issue was not the witness' testimony, per se, but the witness' commentary on how the actions in the videotape did not comport with store policy. The Mississippi Supreme Court found this to be error because the opinion testimony was not based upon the store owner's first-hand knowledge as required by Mississippi Rule of Evidence 701 due to the fact that the store owner had not personally witnessed Wells' actions on the date in question. Like the witness in Wells, neither Farmer nor Durham possessed first-hand knowledge of Ratliff's actions on December 9. However, the court in Wells isolated the impermissible testimony and concluded "that considering the totality of the evidence presented in this case, the error was, at best, harmless." Wells, 604 So.2d at 280.
¶ 9. Applying the logic of Wells, this Court has reviewed the offending testimony. Farmer testified as follows:
Q: And I want you to kind of limit, because it's a long videotape, your relation of what you saw to the jury from the time 17:53 until 17:56. And that would be, what, about seven minutes, or six, or seven minutes?
A: Yes, sir.
BY DEFENSE COUNSEL: I presume I may have a continuing objection to all of this, now?
BY THE COURT: Yes, sir, continuing objection.
Q: From those times I've just talked about from 7:53.00 to 7:56.00, what did you observe?
A: A gentleman walked in the store. He walks back to the Newport rack. He picks up Newports off the rack and he drops them on the floor. He picks them back up and walks to the front of the store. Before he gets to the counter, he puts them in his hands and he bolts out the front door. Never pays for them.
Durham testified as follows:
Q: All right. So how did you become aware of a shoplifting at the store?
A: Uh, I was in the back putting up cigarettes from the truck that we had got in, and Sylvia Wood was out front working and she saidcame back there and said, "Did the man pay for three cartons of Newport?" I said, "What man?" I said, "Sylvia, I'm in the back. Nobody comes back here and pays for anything."
So, that's when I went to the TVto our TV and rewinded the tape to see who it was. And that's when I saw him get three cartons of cigarettes. He dropped like one or two on the floor and pickedreached down to pick them up. Then he went down to the counter and straight out to the door....

*1066 Q: Now, of course, you said you'd seen that videotape?
A: Yes.
Q: That's what you saw?
A: Yes, sir.
Q: Now, were those cartons of cigarettes for sale in the Tobacco Superstore?
A: Yes, sir.
Q: What do those go for?
A: Uh, $31.99.
Q: Per carton?
A: Yes, sir.
Q: And you said you saw three of them?
A: Yes, sir.
Q: And how did you know they were Newports?
A: Uh, they were green and white. They are where the Newports go.
Q: All right.
A: I mean
Q: All right. Now, you saw some individual take those and you watched him on the video, and what happened?
A: He just took the cigarettes and left with them. He never paid for them. He went to the counter where our cash register is and went straight out the door.
¶ 10. Clearly, neither witness possessed personal knowledge of the event which was recorded on the videotape. Clearly, neither witness would then be positioned under Rule 701 to offer opinion testimony regarding Ratliff's recorded actions. However, like the court in Wells, considering the totality of the evidence before the court, "the error was, at best, harmless." Id. at 280 (citations omitted).

II. WAS THE EVIDENCE SUFFICIENT TO SUSTAIN A VERDICT OF GUILTY?
¶ 11. Ratliff argues that "[t]he elements of shoplifting are simply not proven in the case at bar. Any individual could have removed the Newport cigarettes from the shelf....The only evidence thereof is a videotape and the inadmissible testimony of [Farmer] and [Durham]."
¶ 12. Our standard of review regarding the legal sufficiency of the evidence is as follows:
[W]e must, with respect to each element of the offense, consider all of the evidence not just the evidence which supports the case for the prosecutionin the light most favorable to the verdict. The credible evidence which is consistent with the guilt must be accepted as true. The prosecution must be given the benefit of all favorable inferences that may reasonably be drawn from the evidence. Matters regarding the weight and credibility to be accorded the evidence are to be resolved by the jury. We may reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty.
Wetz v. State, 503 So.2d 803, 808 (Miss. 1987) (citations omitted).
¶ 13. Furthermore, matters regarding the weight and credibility of the evidence are to be resolved by the jury. Neal v. State, 451 So.2d 743, 758 (Miss.1984). This Court is not at liberty to reverse unless, with respect to one or more of the elements of the charged offense, the evidence considered is such that reasonable and fair-minded jurors could only find the accused not guilty. Christian v. State 859 So.2d 1068, 1072(¶ 12) (Miss.Ct.App.2003) *1067 (citing Wetz, 503 So.2d at 808; McClain v. State, 625 So.2d 774, 778 (Miss.1993)).
¶ 14. The jury viewed the videotape of the shoplifting. The jury heard the testimony of Farmer and Durham, as well as the testimony of the investigating officer. The jury was able to examine the coat Ratliff was wearing when he was arrested. The evidence is not such that reasonable and fair-minded jurors could only find Ratliff not guilty. This argument lacks merit.

III. WAS THE JURY VERDICT AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE?
¶ 15. Ratliff next argues that he in entitled to a new trial. When discussing whether the verdict is against the overwhelming weight of the evidence, the standard of review is abuse of discretion in failing to grant a new trial. In Montana v. State, the Mississippi Supreme Court stated:
In determining whether a jury verdict is against the overwhelming weight of the evidence, this Court must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial. Only in those cases where the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will this Court disturb it on appeal.
Montana v. State, 822 So.2d 954, 967-68(¶ 61) (Miss.2002) (citation omitted). As already discussed, the record reflects ample evidence and testimony to support the verdict. This issue lacks merit.
¶ 16. THE JUDGMENT OF THE CIRCUIT COURT OF COAHOMA COUNTY OF CONVICTION OF FELONY SHOPLIFTING AS AN HABITUAL OFFENDER AND SENTENCE OF FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. THE SENTENCE IMPOSED SHALL RUN CONSECUTIVELY TO ANY AND ALL SENTENCES PREVIOUSLY IMPOSED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO COAHOMA COUNTY.
KING, C.J., BRIDGES AND SOUTHWICK, P.JJ., IRVING, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR.