# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-KA-00769-COA

**TANYATTA KINNEL A/K/A TANYATTA TANAY KINNEL A/K/A TANYATTA KINNELL**                     **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                     **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 05/11/2018 |
| TRIAL JUDGE: | HON. CHARLES E. WEBSTER |
| COURT FROM WHICH APPEALED: | TUNICA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: W. DANIEL HINCHCLIFF |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: LISA L. BLOUNT |
| DISTRICT ATTORNEY: | BRENDA FAY MITCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 10/22/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE CARLTON, P.J., GREENLEE AND TINDELL, JJ.

### GREENLEE, J., FOR THE COURT:

¶1.     Tanyatta Kinnel was convicted of conspiracy to commit armed robbery and attempted armed robbery, and she was acquitted of armed robbery. The trial court sentenced Kinnel to serve five years for conspiracy and ten years with five years suspended for attempted armed robbery, to be served concurrently in the Mississippi Department of Corrections. After the denial of her post-trial motion, Kinnel appealed, claiming the trial court erred by allowing an investigator to narrate part of a surveillance video at trial. Finding no reversible error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     On October 17, 2016, Derek Phillips picked up Barry McCray (who lived in Memphis), and they drove to the Horseshoe Casino in Tunica, Mississippi.  When they arrived at the casino, they shot dice at the craps table.

¶3.     At some point during the evening, Phillips noticed a man (who was later identified as Cortez Watts) and a woman (who was later identified as Tanyatta Kinnel) at the blackjack table behind him.  Phillips's game was going well, and Cortez asked him for a cigarette.  As Phillips handed Cortez a cigarette, Phillips said, "[I am] a boss."  Then at some point, Cortez disappeared, and Kinnel gave Phillips a napkin with her phone number on it.

¶4.     Phillips and McCray left the casino around 3 a.m. and stopped at a gas station.  While they were there, Phillips called Kinnel so she would have his number.  Because it was late, Phillips and McCray planned to drive back to Memphis.  But Kinnel told Phillips that she had lost all of her money at the casino and asked if he would bring her a Sprite from the gas station.  So Phillips went inside the store and purchased a Sprite, cigarettes, and condoms.  Then Kinnel gave him directions to a nearby apartment complex—Kirby Estates.

¶5.     When they arrived at the apartment complex, Kinnel and another man (who was later identified as Javonta Watts) approached Phillips's vehicle. Javonta said that he liked Phillips's car.  And then Kinnel asked Phillips to get out so that he could give her a hug. When Phillips got out of the vehicle, Cortez appeared and said, "You say you're the boss, right?  Let me get that money you just won."  A skirmish ensued until Cortez finally fell to the ground, pulled out a gun, and shot Phillips in the neck.  Meanwhile, Javonta took

2

McCray's cell phone. But McCray was able to run away and call the police with his other cell phone.

¶6. At trial, Phillips testified that if Kinnel had not asked for the Sprite, "none of this [would have] happened." And she was the only reason he went to Kirby Estates. Likewise, McCray testified that the reason they went to the apartment complex was because Kinnel told Phillips to come over.

¶7. Bernadette Logan, captain of investigations for the Tunica County Sheriff's Office, also testified at trial. Investigator Logan testified that when she arrived at the scene, Phillips was in an ambulance and that she was able to obtain a statement from McCray. Then she requested surveillance footage from the Horseshoe Casino. Exhibits 1 and 2, which contained the footage, were admitted into evidence without objection at trial. And Investigator Logan testified that when she viewed the footage, she observed Kinnel inside the casino. The video was then played for the jury.

¶8. As the video was playing, Investigator Logan testified that the footage appeared to show Cortez and Kinnel. And at another point, Investigator Logan testified that the footage showed the parking lot of the Horseshoe Casino. At that point, defense counsel objected to "a running commentary as to what's depicted." Counsel argued "[t]he jury is more than capable of looking at this video." The court overruled the objection but allowed for a continuing objection.

¶9. Then, Investigator Logan testified that the footage showed Phillips with a black shirt on at the end of a table. Investigator Logan also identified McCray, who was wearing a red

3

shirt. Then the prosecutor asked, "[A]re you able to identify anyone in this [part of the video]?" And Investigator Logan said, "Tanyatta Kinnel and Cortez Watts." Finally, the prosecutor asked, "[A]re you able to identify anyone in this [part of the video]?" And Investigator Logan said, "Tanyatta Kinnel and Derek Phillips."

¶10.    Investigator Logan testified that after she reviewed the surveillance footage, she obtained a search warrant for James Watts's apartment at Kirby Estates.[1]  According to Investigator Logan, Kinnel and Cortez were present when the warrant was executed on October 18, 2016. Ultimately, Kinnel, Cortez, and Javonta were developed as suspects.

¶11.    On October 19, 2016, Phillips and McCray were presented with photo lineups. Phillips identified Kinnel as the woman he saw at the casino and at the apartment complex when he got shot. McCray identified someone else. But at trial, both Phillips and McCray identified Kinnel as the woman from the casino and the apartment complex.

## DISCUSSION

¶12.    Kinnel claims that the trial court erred by allowing Investigator Logan to narrate part of the surveillance video while it was being played for the jury.

¶13.    The standard of review for the admission of evidence is abuse of discretion. *Land v. State*, 198 So. 3d 388, 390 (¶7) (Miss. Ct. App. 2016). But "[e]ven if this Court finds an erroneous admission . . . of evidence, we will not reverse unless the error adversely affects a substantial right of a party." *Id*. (quoting *Smith v. State*, 942 So. 2d 308, 313 (¶11) (Miss. Ct. App. 2006)).

_____

[1] Investigator Logan determined that Kinnel and Cortez were in a relationship and that James was Cortez's father.

¶14. This Court has held that any opinion offered by a lay witness must meet the requirements of Mississippi Rule of Evidence 701. *Ratliff v. State*, 879 So. 2d 1062, 1064 (¶5) (Miss. Ct. App. 2004). "Rule 701 permits the introduction of non-expert opinion evidence if '(a) the opinion is rationally based on the perception of the witness and (b) is helpful to the clear understanding of the determination of a fact in issue.'" *Id*. (quoting M.R.E. 701). This Court has further held:

> It is permissible for a witness to narrate video evidence when the narration simply describes what is occurring in the video, but it is impermissible if the witness attempts to place his own subjective interpretation of events transpiring in the video based on nothing beyond the witness's own inspection of the contents of the videotape.

*Land*, 198 So. 3d at 391 (¶9) (quoting *Gales v. State*, 153 So. 3d 632, 645 (¶41) (Miss. 2014)).

¶15. At trial, prior to the surveillance video being played for the jury, Investigator Logan testified that when she viewed the footage, she observed Kinnel inside the casino. Kinnel's counsel did not object to this testimony.

¶16. As the video was playing, Investigator Logan testified that the footage appeared to show Cortez and Kinnel. And at another point, Investigator Logan testified that the footage showed the parking lot of the Horseshoe Casino. At that point, defense counsel objected to "a running commentary as to what's depicted." Counsel argued, "The jury is more than capable of looking at this video." The court overruled the objection.

¶17. Then, Investigator Logan testified that the footage showed Phillips with a black shirt on at the end of a table. Investigator Logan also identified McCray, who was wearing a red

shirt. Then the prosecutor asked, "[A]re you able to identify anyone in this [part of the video]?" And Investigator Logan said, "Tanyatta Kinnel and Cortez Watts." Finally, the prosecutor asked, "[A]re you able to identify anyone in this [part of the video]?" And Investigator Logan said, "Tanyatta Kinnel and Derek Phillips."

¶18. Any error in admitting Investigator Logan's testimony did not affect a substantial right of Kinnel and was harmless. By the time Kinnel's counsel objected, Investigator Logan had already testified that when she reviewed the surveillance footage, she observed Kinnel in the casino.[2] Additionally, Kinnel seemingly admits to being at the casino and the apartment complex. In her brief, Kinnel states: "Her only involvement was handing a napkin with her telephone number on it to [Phillips], and directing him to the apartments. She left as the problems started."

¶19. Although Investigator Logan did not explain how she was able to identify the individuals in the surveillance video, Kinnel did not object on that basis. Therefore, that issue is not properly before us. *See Jackson v. State*, 935 So. 2d 1108, 1117 (¶28) (Miss. Ct. App. 2006). When Kinnel did object, she objected to Investigator Logan's narration of the surveillance video. However, considering the video and testimony at trial, any error in admitting Investigator Logan's testimony was harmless. Therefore, this issue is without merit.

¶20. **AFFIRMED.**

---

[2] This Court has held that "any argument to exclude the testimony prior to the objection is procedurally barred." *Land*, 198 So. 3d at 391 (¶10) (quoting *Gales*, 153 So. 3d at 647 (¶49)).

**BARNES, C.J., CARLTON AND J. WILSON, P.JJ., TINDELL, LAWRENCE, McCARTY AND C. WILSON, JJ., CONCUR. WESTBROOKS AND McDONALD, JJ., CONCUR IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**