# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 97-KA-00292-SCT

*LARRY DAVIS*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/22/92 |
| TRIAL JUDGE: | HON. LEE J. HOWARD |
| COURT FROM WHICH APPEALED: | OKTIBBEHA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | MARK G. WILLIAMSON |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:  SCOTT STUART |
| DISTRICT ATTORNEY: | FORREST ALLGOOD |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 9/17/98 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 10/8/98 |

**EN BANC.**

**MILLS, JUSTICE, FOR THE COURT:**

## STATEMENT OF THE CASE

¶1. On April 22, 1992, Larry Davis was convicted of armed robbery and sentenced to serve forty years in the Mississippi Department of Corrections. Aggrieved, Davis brings this appeal assigning the following as error:

> **I. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT ADMITTED EVIDENCE THAT DAVIS FLED FROM AUTHORITIES.**

## STATEMENT OF THE FACTS

¶2. On December 7, 1991, Jim Hinds was working as a night auditor at the front desk of the University Inn in Starkville, Mississippi. Around 4:00 A.M. two young men walked to the front of the hotel and stopped to converse. One of the young men, who was wearing a black trench coat, walked inside the hotel and inquired about the cost of a room. Hinds informed the man that a room was $30.00. The man responded that $30.00 was too much and walked outside. Shortly thereafter,

the man walked back inside the motel and told Hinds that he wanted a room. Hinds handed him a registration card which he proceeded to fill out. Hinds then asked to see some identification at which point the man pulled out a gun and pointed it at Hinds telling him to get his hands up and open the cash register. The man then took Hinds's wallet and all of the money in the cash register, estimated to be about $250. Following the incident, Hinds gave the police a description of his assailant, a detailed description of the clothes that he wore, and a description of the gun used.

¶3. On December 10, 1991, Officer Banks, a deputy sheriff of Oktibbeha County, received a call on his police radio to "lookout for Larry Davis" who was in a 1978 or 1979 green Monte Carlo or Grand Prix. The police were looking for Davis in connection with an armed robbery committed that day in Clay County. Banks, who was familiar with Davis and the neighborhood, spotted the car at the home of Davis's aunt and called for back up. After several police officers arrived, Davis realized the police were present and jumped out the back window of the home. At this time Davis was wearing a black trench coat as previously described by Hinds. He was wearing black Adidas pants and a blue sweater, the same clothes worn by the robber Hinds had described. Davis's flight took him through a nearby bean field where he removed and discarded the black trench coat. Hinds later identified the discarded coat as the one worn by the robber. However, Hinds was unable to pick Davis out of a line-up, and at trial he could not say with certainty that Davis was the perpetrator. Hinds testified the gun found in Davis's aunt's house looked exactly like the gun the robber used.

¶4. Over the objection of the defense, the trial court allowed the prosecutor to put on testimony about Davis's flight from authorities. The prosecutor asserted that testimony of Davis's flight was necessary background information to explain how the police obtained the clothes that Davis was wearing on the night of the robbery. The trial judge ruled that evidence of flight was admissible to establish how the police obtained the Davis's clothes and to prove that Davis, who was apprehended on December 10, was the same as the person who committed the robbery on December 7.

¶5. The State linked Davis to the University Inn robbery by proof that the address listed on the registration card by the robber, "Route 6, Box 97, Deerfield," was remarkably similar to the address of Davis's ex-girlfriend which was "Route 6, Box 97, Starkville." Further, the State proved that the first five digits in the number given by the robber as his license number were identical to the first five digits in Davis's social security number. The State also put on evidence of a handwriting analysis conducted by the police comparing the registration card filled out by the robber with known samples of Davis's handwriting. Curtis testified that he took Davis 50 short sample forms and asked him to fill them out for a comparison. He stated that Davis began filling out the forms normally, but then he slowed down taking 30 seconds to one minute to write each letter. After an hour to an hour and a half he had filled out nine forms and refused to fill out the remaining forty-one forms. A handwriting expert, Frank Hicks, testified that the first two lines of one of the forms appeared to be natural writing, but that the remainder of the forms were an obvious attempt to disguise his writing. Hicks testified that the first two lines written by Davis compared favorably to the registration card completed by the armed robber. However, Hicks conceded that with such a small sample of Davis's handwriting he could not positively say that Davis's handwriting matched the handwriting on the registration card.

## DISCUSSION

## I. WHETHER THE TRIAL COURT ERRED IN ADMITTING EVIDENCE THAT DAVIS FLED FROM AUTHORITIES.

¶6. The defendant complains that evidence of his disrobing flight through the wintry bean field was unfairly admitted into evidence against him. It is well settled that evidence of flight or escape is admissible as an exception to Mississippi Rule of Evidence 404(b) in order to show guilty knowledge. *Mariche v. State*, 495 So.2d 507, 508 (Miss. 1986)(*citing **Lee v. State***, 457 So.2d 920 (Miss. 1984); *Hill v. State*, 432 So.2d 427 (Miss. 1983)(remanded for resentencing at 659 So.2d 547(Miss. 1994)).

¶7. While evidence of flight is admissible under Rule 404(b), it must be filtered through Mississippi Rule of Evidence 403. See *Ford v. State*, 555 So.2d 691 (Miss. 1989). Rule 403 provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

M.R.E. 403. The trial court is afforded great discretion in determining whether or not to admit evidence under Rule 403. *Foster v. State*, 508 So.2d 1111, 1118 (Miss. 1987).

¶8. Davis asserts that the trial judge erred in admitting evidence of his flight from authorities. He argues that such evidence was highly prejudicial in his case and had little evidentiary value in determining his guilt of the December 7th crime, since he had also committed another crime for which he was being pursued. Additionally, Davis objects to the prosecutor referring to his flight in the state's closing argument. Davis cites *Mack v. State*, 650 So.2d 1289 (Miss. 1994), to support his position that this evidence should not have been admitted. In *Mack v. State*, the defendant, who was charged with murder, had escaped from the Louisiana State Penitentiary and was driving a stolen vehicle. Not surprisingly, he fled when authorities found and pursued him. Evidence of this flight was admitted at his murder trial. *Mack v. State*, 650 So. 2d 1289, 1309-10 (Miss. 1994). He objected to the admission of the evidence of flight contending that it was probative of something other than his guilty knowledge for that particular crime. *Mack*, 650 So. 2d at 1310. We held that when evidence of flight is probative of guilt or guilty knowledge for an offense other than the crime for which the defendant is being tried, that evidence should be excluded. *Id.*

¶9. The case *sub judice* is easily distinguished from *Mack v. State*. Unlike Mack, Davis was discarding evidence from the crime in issue as he fled. He was also wearing the same clothes when arrested in flight as he had worn during the commission of the robbery. These facts have substantial probative value which outweigh any prejudicial effect of this evidence. The instant facts establish identity and guilty knowledge as excepted under Mississippi Rule of Evidence 404(b).

### CONCLUSION

¶10. The trial court did not err in admitting evidence of Davis's flight from authorities. Thus, we affirm the trial court.

¶11. **CONVICTION OF ARMED ROBBERY AND SENTENCE OF FORTY (40) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED.**

**PRATHER, C.J., PITTMAN, P.J., BANKS, ROBERTS, SMITH AND WALLER, JJ.,**

**CONCUR. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SULLIVAN, P.J.**

   **McRAE, JUSTICE, DISSENTING:**

¶12. Were the majority true to this Court's jurisprudence, it would not have to flee from the law. However, the majority chooses the high road and conspicuously, perhaps conveniently, avoids the similar case of *Fuselier v. State*, 702 So. 2d 388 (Miss. 1997) (*Fuselier III*), in which this Court reversed the trial court's admission of prejudicial flight evidence.

¶13. The majority reminds us of the legal principle that flight evidence is admissible as an exception to Mississippi Rule of Evidence 404(b) to show guilty knowledge. Yet, the majority fails to answer the key question in this case: "[o]f what did the defendant have guilty knowledge when he fled?" We have no definitive knowledge as to whether the defendant's intent to flee was in response to the December 7 or the December 10 robbery. Is it the jury's place to determine whether he fled from one alleged crime as opposed to the other? Reason and justice reply with "no". Indeed, applying Miss. R. Evid. 403, one is resolved to find such questionability itself utterly prejudicial and thus warranting exclusion. Further, we may not neglect the rule that flight evidence is inadmissible where the court knows of an independent reason--such as that of two alleged crimes--for the flight of which the jury may not be informed because of prejudicial effect on the defendant. *See Fuselier III*, 702 So. 2d at 390.

¶14. In *Fuselier III*, we reversed the trial court's admission of prejudicial flight evidence in just such a flight through the woods. The fleeing defendant was both an escapee and indicted for murder. Quoting *Fuselier v. State*, 468 So. 2d 45, 57 (Miss. 1985) (*Fuselier I*) (in which a flight instruction was at issue), this Court stated that "'Fuselier was obviously put in a no-win situation by either being required to explain his flight and the fact that he was a prison escapee or not explaining the flight and subjecting himself to a flight instruction.'" *See Fuselier III*, 702 So. 2d at 390. In refusing to admit the flight evidence, this Court continued that the admission of flight evidence would allow the jury "to draw the same inference . . . that the jury should not have been allowed to draw in the first trial, namely that Fuselier's flight was probative of his guilt or guilty knowledge in relation to Rose Gunter's murder. Nonetheless, evidence of Fuselier's flight was also probative of his escapee status." *See Fuselier III*, 702 So. 2d at 390.

¶15. Hence, we are faced with a situation in which the Court is inconsistent as to whether or not it will allow prejudicial flight evidence. It is indeed disturbing that the Court has lost sight of what it stated so recently in *Fuselier III*:

   [N]either evidence of flight nor an instruction on flight is permissible when the evidence of flight is probative of things other than the guilt of the defendant. . . . To paraphrase previous considerations by this Court, no person accused, however angry the people, however evil the crime, regardless of how strong the appearance of guilt, can be denied the full protection of the law and a fair and orderly trial.

*Id.* at 394.

¶16. When contemplating the giving of a flight instruction or admission of flight evidence, it is paramount that the court system provide justice. Hence, a court should know why and for what it is giving such evidence. Today, the Court regresses as it opens the floodgates of injustice to flight evidence regardless of whether it knows why the defendant flees.

¶17. Based on the above analysis, reason leads solely to reversal. Therefore, I must dissent.

**SULLIVAN, P.J., JOINS THIS OPINION.**