# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2004-KA-00137-SCT

*WILLIAM L. SHAW a/k/a WILL SHAW*

**v.**

*STATE OF MISSISSIPPI*

DATE OF JUDGMENT:                08/07/2003
TRIAL JUDGE:                     HON. W. SWAN YERGER
COURT FROM WHICH APPEALED:       HINDS COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANT:         JOE N. TATUM
ATTORNEYS FOR APPELLEE:          OFFICE OF THE ATTORNEY GENERAL
                                 BY:  W. DANIEL HINCHCLIFF
DISTRICT ATTORNEY:               FAYE PETERSON
NATURE OF THE CASE:              CRIMINAL - FELONY
DISPOSITION:                     AFFIRMED - 08/04/2005
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE WALLER, P.J., GRAVES AND RANDOLPH, JJ.

### GRAVES, JUSTICE, FOR THE COURT:

¶1.     William L. Shaw ("Shaw") and Joseph Davis ("Joseph") were indicted in Hinds County for the capital murder of Jonathan Duffie in violation of Section 97-3-19(2)(e) of the Mississippi Code of 1972.  Shaw and Joseph were tried separately, and on August 7, 2003, Shaw was found guilty of capital murder.  Following the jury's verdict, the trial judge sentenced Shaw to a term of life imprisonment without the possibility of parole.  Unsuccessful on post-trial motions, Shaw timely brings this appeal and asserts four errors in the trial.  Finding no reversible error, we affirm the judgment of the trial court.

## FACTS AND PROCEDURAL HISTORY

¶2. On the afternoon of October 27, 2001, Jonathan Duffie ("Duffie") asked Reginald Davis ("Reginald") to come to Duffie's resident at 2958 Kentwood Drive, Jackson, Mississippi, to smoke marijuana. After Reginald's arrival, Duffie then telephoned Shaw and Joseph to come to the same location for the same purpose. Shaw and Davis arrived Duffie's home approximately ten minutes following the call. The four men listened to music together and continued to smoke marijuana provided by Duffie.

¶3. At some point during this gathering, Shaw pulled a gun and shot Duffie in the buttocks and shot Joseph in the knee. Duffie then reached for his own weapon, but Shaw fired a fatal shot to Duffie's head. Shaw then took money and the weapon from Duffie, and the three men fled the scene.

¶4. Joseph fled to his home and later to Central Mississippi Medical Center ("C. M. M. C.") for treatment of the gunshot wound. The bullet was retrieved from Joseph's knee and submitted by the emergency room staff to law enforcement officials. Evidence later determined that the bullet retrieved from Joseph's knee was fired from the same weapon recovered from the crime scene.

¶5. Statements were obtained from Shaw, Joseph and Reginald. Shaw and Joseph initially claimed to have not been present and that Joseph's gunshot wound was the result of a mysterious drive-by shooting. Reginald initially denied any knowledge of the murder. Afterwards, both Joseph and Reginald stated and then testified to the above facts concerning Shaw murdering Duffie.

¶6.     On February 12, 2002, an indictment was filed charging Shaw and Joseph with capital murder.     On August 7, 2003, Shaw was tried and subsequently found guilty of murder and sentenced to life imprisonment without the possibility of parole in an institution to be designated by the Department of Corrections.     Having failed on all post-trial motions, Shaw timely brings this appeal and raises four assignments of error.

## DISCUSSION

### I.     Evidence of the Defendant's Theory of the Case.

¶7.     Shaw contends that the trial court erred in denying him the opportunity to offer evidence concerning his theory of the case.    Shaw attempted to call Ernest Champion ("Champion"), his stepfather, to establish hostility between Duffie and Joseph.     According to Shaw,    Duffie alleged that Joseph had burglarized his (Duffie's) girlfriend's home.    Shaw argued at trial that Joseph killed Duffie and that the likely motive was hostility over the alleged burglary.    The State moved in limine to prevent Shaw from offering hearsay testimony as to statements Duffie allegedly made to a third person.    The trial court excluded the testimony as inadmissible hearsay.

¶8.     Our standard of review for the admission or exclusion of evidence is very familiar.    "A trial judge enjoys a great deal of discretion as to the relevancy and admissibility of evidence. Unless the judge abuses this discretion so as to be prejudicial to the accused, the Court will not reverse this ruling."     *Jefferson v. State,* 818 So.2d 1099, 1104 (Miss. 2002) (quoting *Fisher v. State,* 690 So.2d 268, 274 (Miss. 1996)).    *See also* **Hill v. State,** 774 So.2d 441, 444 (Miss. 2000); *Crawford v. State,* 754 So.2d 1211, 1215 (Miss. 2000); *Gilley v. State,* 748 So.2d 123, 126 (Miss. 1999); *Hughes v. State,* 735 So.2d 238, 269 (Miss. 1999).    ¶9.

3

Champion's proffered testimony was that approximately a week prior to the victim's death, Duffie confronted Joseph regarding the burglary. However, Shaw does not dispute that the proffered testimony was hearsay. Rather than arguing the evidentiary value of the statements, Shaw argues that the statements were a vital part of his defense. Shaw relies upon *Minor v. State,* 379 So.2d 495, 497 (Miss. 1979), for the proposition that under the "modern doctrine" regarding the admissibility of evidence, a defendant should be allowed great latitude in the admission of evidence. Further, Shaw cites *Terry v. State,* 718 So.2d 1115, 1123 (Miss. 1998), as an example of this Court's application of the *Minor* rule.

¶10.    We recognize the *Minor* rule and its application to the admissibility of evidence in criminal cases. However, Shaw omits an essential component of the *Minor* rule which this Court explicitly set forth in *Terry*:

> All evidence that is proposed by either side to further its theory, hypothesis, or argument, must first comply with the Mississippi Rules of Evidence. . . As stated earlier, the relevancy and admissibility of evidence are largely within the discretion of the trial judge and reversal is proper only where that discretion has been abused.

*Id.* at 1122.    Thus, here the trial court ruled that the proffered testimony was inadmissible hearsay under the Mississippi Rules of Evidence. To this end, we hold that with regard to the admissibility of evidence, a defendant's latitude to further his theory, hypothesis, or argument can never extend beyond the parameters of the M.R.E. *See Lynch v. State,* 877 So.2d 1254, 1282 (Miss. 2004). To allow a defendant to introduce evidence, otherwise inadmissible under the M.R.E., in furtherance of his theory of the case would severely circumvent the purpose of

4

our evidentiary rules. The exclusion of hearsay, even if it has some connection to the defendant's theory, is entirely proper.

¶11. A complete review of the record reveals that Shaw never denied that the statements proffered by Champion were hearsay. The State timely objected to any hearsay of what was said by the victim or what was said by a third person who was not present to testify pursuant to M.R.E. 801. Because Shaw never demonstrated the evidentiary admissibility of Champion's proffered testimony, we conclude that the trial court correctly ruled it as inadmissible hearsay. Therefore, the trial court was well within its discretion in excluding this proof.

## II. Evidentiary Chain of Custody.

¶12. Over Shaw's objections, the trial court admitted into evidence the bullet which was purportedly taken from Joseph's knee at C.M.M.C. Shaw argues that this was error because the State never established a proper chain of custody.

¶13. The trial court is vested with the discretion for determining whether an adequate evidentiary chain of custody has been established by the State. *Morris v. State,* 436 So.2d 1381, 1388 (Miss. 1983); *Danner v. State,* 748 So.2d 844, 846 (Miss Ct. App. 1999). The burden of producing evidence to demonstrate a break in the chain of custody rests with the defendant, and the applicable test for determining whether the defendant has met this burden "is whether there is any reasonable inference of likely tampering with or substitution of evidence." *Hemphill v. State,* 566 So.2d 207, 208 (Miss. 1990); *Brooks v. State,* 761 So.2d 944, 948 (Miss. Ct. App. 2000).

¶14. Joseph testified at trial that he was struck in the knee with a bullet at the time that Shaw shot and killed Duffie. He told the jury that he went to C.M.M.C. where the bullet was

5

removed within an hour of Duffie's murder. Investigator Charles Taylor of the Jackson Police Department, testified that he went to the hospital less than an hour later and recovered the "projectile that had been recovered from Joseph." At the hospital, Investigator Taylor asked for the "evidence" from a nurse on staff in the emergency room by the name of D. Johnson. When Taylor asked for the evidence regarding Joseph, he was handed the bullet extracted from Joseph's knee. It was later determined that the bullet recovered from Joseph's knee was fired from the same gun used to kill Duffie.

¶15.    Shaw maintains in his brief, as he did at trial, that Investigator Taylor's testimony was unsubstantiated. Shaw claims that no person who had any connection to the hospital where the bullet was extracted was called to authenticate the projectile. In its brief, the State argues that it attempted to locate the nurse who gave the projectile to Investigator Taylor, but could not find her because she rendered a fictitious and nonexistent address to law enforcement officials. The trial court ruled that the bullet could be admitted into evidence, finding that the chain from Joseph's knee to Investigator Taylor was sufficient without some showing of tampering, even though the State could not produce D. Johnson. We have held that establishing a proper chain of custody has "never required the proponent to produce every person who handled the object, nor to account for every moment of every day." *Butler v. State,* 592 So.2d 983, 985 (Miss. 1991). Instead, "[p]roof of the chain of custody is intended to satisfy the fact-finder of the identify and validity of the evidence. Without doubts being raised, a break in the chain does not bar introduction." *Wells v. State,* 604 So.2d 271, 277 (Miss. 1992); *Bryant v. State,* 748 So.2d 780, 784 (Miss. Ct. App. 1999).

6

¶16. We hold that Shaw has not shown any reasonable inference of likely tampering with or substitution of evidence. Joseph testified that he was present at Duffie's home at the time of the murder. Further, he testified that he fled the crime scene and then sought treatment at C.M.M.C. Investigator Taylor testified that he arrived at C.M.M.C., requested the "evidence" from Joseph, and was given the bullet extracted from Joseph's knee. Considering the facts before us, there is no doubt that the projectile is what it purports to be, the bullet that hit Joseph in the knee at the murder scene. Further, Shaw has failed to demonstrate a reasonable inference of likely tampering or substitution of evidence. While the chain was not thoroughly demonstrated, the State offered sufficient evidence that the projectile is what the State claimed it to be. Therefore, the trial court's ruling to admit the bullet extracted from Joseph's knee was well within its discretion.

### III. Evidence of Defendant's Flight.

¶17. Following his initial arrest on October 31, 2001, Shaw attempted to escape from the lawful custody of the Jackson Police Department on November 2, 2002. The State sought to introduce evidence of Shaw's escape attempt. Shaw objected on the grounds of relevance and, alternatively, that its probative value was substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury pursuant to M.R.E. 403. The trial court held that the escape was admissible and not unfairly prejudicial. At trial, the court admitted the testimony of two witnesses detailing Shaw's flight from authorities. Shaw claims that the trial court erred by allowing evidence of his escape.

¶18. We have consistently held that a defendant's flight is admissible as evidence of consciousness of guilt. *Fuselier v. State,* 702 So.2d 388, 390 (Miss. 1997). However, a

7

flight instruction is appropriate only where the flight is unexplained and somehow probative of guilt or guilty knowledge. *Id.* Therefore, evidence of flight is inadmissible where there is an independent reason for the flight. *Id.* Also, it is well settled that evidence of flight or escape is admissible as an exception to M.R.E. 404(b) in order to show guilty knowledge. *Davis v. State,* 722 So.2d 143, 145 (Miss. 1998); *Mariche v. State,* 495 So.2d 507, 508 (Miss. 1986) (citing *Lee v. State,* 457 So.2d 920, 923 (Miss. 1984)); *Hill v. State,* 432 So.2d 427 (Miss. 1983). While evidence of flight is admissible under Rule 404(b), it must be filtered through M.R.E. 403. *See Ford v. State,* 555 So.2d 691 (Miss. 1989). Rule 403 provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

M.R.E. 403. In determining whether to admit evidence of flight under Rule 403, the trial court is afforded great discretion. *Foster v. State,* 508 So.2d 1111, 1118 (Miss. 1987).

¶19. Shaw attacks the trial court's ruling allowing evidence of his attempted escape to the jury. Shaw argues that since his escape amounts to a different, independent crime, it should not have been admissible at a trial on the charge of capital murder. Shaw was charged with capital murder. Here, the trial judge erred in finding that evidence of Shaw's flight was admissible because Shaw in fact possessed an independent reason for fleeing: he was attempting to escape from lawful confinement. Escape from established lawful police custody is a criminal offense of itself and punishable in this State by up to five years in prison. Miss. Code Ann. § 97-9-49 (Supp. 2004). Under these circumstances, current jurisprudence

8

prohibits the State from instructing or offering evidence of flight which allows the jury to draw an inference of the defendant's guilt or guilty knowledge. *See Fuselier v. State,* 702 So.2d at 390-91; *Mack v. State,* 650 So.2d 1289, 1308-09 (Miss. 1994).

¶20. Though the State offered evidence of Shaw's flight, it did not offer an instruction on flight. We have attempted to equalize evidence of flight and flight instructions with regard to their admissibility under our evidentiary rules. This Court has held in *Mack,* that, "if a prosecutor cannot give a jury instruction on flight because evidence of flight is probative of things other than the defendant's guilt or guilty knowledge, it follows that the prosecutor cannot place evidence [of flight] before the jury." *Id.* at 1310.

¶21. Generally, we have upheld evidence of flight as well as flight instructions only where there was no independent reason or basis for flight. *See Jimpson v. State,* 532 So.2d 985 (Miss. 1988); *Mariche v. State,* 495 So.2d 507 (Miss. 1986). Because Shaw possessed a sufficient, independent basis for his flight, we hold that the trial court erred in allowing testimony of his escape to be presented to the jury in order to infer guilt or guilty knowledge to the charge of capital murder.

¶22. While acknowledging that it was error to allow the flight testimony, we conclude that such error was harmless beyond a reasonable doubt. A thorough review of the record reveals that Shaw's two companions, Joseph and Reginald, testified that Shaw murdered Duffie. Shaw was placed at the scene of the murder by other corroborating evidence. The bullet extracted from Joseph's knee was fired from the same weapon used to kill Duffie. In sum, the evidence of Shaw's flight pales in comparison to more direct evidence of his guilt. Under the facts before us, we hold that admission of Shaw's escape was harmless error.

## IV. Sufficiency of Evidence.

¶23. Shaw contends that the trial court erred in denying his motions for directed verdict and judgment notwithstanding the verdict (J.N.O.V.) as to the charge of felony capital murder. Shaw believes that there was insufficient evidence to show that Duffie's death occurred during the commission of a robbery. Thus, Shaw claims that there was insufficient evidence to support the charge of capital murder.

¶24. The standard of review for the denial of a motion for directed verdict and judgment notwithstanding the verdict is the same. *Shelton v. State,* 853 So.2d 1171, 1186 (Miss. 2003). A directed verdict and JNOV both challenge the legal sufficiency of the evidence presented at trial. *Id.* The standard is as follows: "this Court considers all of the evidence in the light most favorable to the State and gives the State the benefit of all favorable inferences that may reasonably be drawn from the evidence." *Seeling v. State,* 844 So.2d 439, 443 (Miss. 2003). The Court must reverse and render if the facts, viewed in that light, point so overwhelmingly in favor of the appellant that reasonable men could not have arrived at a guilty verdict. *Id.* The Court must affirm, however, when there is substantial evidence in support of the verdict of such quality and weight that reasonable and fair-minded jurors in the exercise of impartial judgment might have reached different conclusions. *Id.* This same standard was recently reiterated by the Court in *Bush v. State,* 895 So.2d 836, 843 (Miss. 2005).

¶25. Mississippi's capital murder statute provides in part:

> (2) The killing of a human being without the authority of law by any means or in any manner shall be capital murder in the following cases:

> (e) When done with or without any design to effect death, by any person engaged in the commission of the crime of . . .robbery. . . .

10

Miss. Code Ann. § 97-3-19(2)(e) (Rev. 1994 & Supp. 1998).

¶26. Shaw asserts that the jury did not have legally sufficient evidence to convict him of capital murder with an underlying offense of robbery. Shaw points this Court to the fact that the State offered no evidence that a robbery was the motive for the murder. Shaw argues that the State consistently put forth evidence that the shooting was the result of a confrontation concerning missing marijuana. The State argues that two eyewitnesses testified that Shaw shot Duffie in the buttocks, then in the head. Following the shooting, Shaw reached into the Duffie's pocket, pulled out a wad of money and took Duffie's gun. The State claims that other corroborative evidence supports the testimony of the two eyewitnesses.

¶27. Shaw's argument hangs on the fact that the robbery occurred immediately after the murder. Based on this, he argues that the State offered insufficient evidence to show that the murder occurred during the commission of a felony. In *West v. State,* 463 So.2d 1048 (Miss. 1985), the defendant appealed his conviction for capital murder, contesting robbery as the underlying felony where the victim was shot before he was robbed. This Court held, "In the intervening time between the time of the murder and the time of the taking of the property formed a continuous chain of events, the fact that [the victim] was dead when [the defendant] took the property could not absolve the defendant of the crime of robbery." *Id.* at 1055-56. In the case sub judice, we hold that because the time between the murder and the robbery formed a continuous chain of events, the intent of the statute was complied with and accordingly, the evidence was sufficient to support the conviction.

**CONCLUSION**

¶28.	Finding no reversible error, we affirm the judgment of the Hinds County Circuit Court.

¶29.	**CONVICTION OF CAPITAL MURDER AND SENTENCE OF LIFE IMPRISONMENT, WITHOUT PAROLE, IN THE CUSTODY OF MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.**

**SMITH, C.J., WALLER, AND COBB, P.JJ., EASLEY, CARLSON, DICKINSON AND RANDOLPH, JJ., CONCUR. DIAZ, J., NOT PARTICIPATING.**