CARLTON, J.,
for the Court.
¶ 1. James Brownlee was convicted by a Clay County Circuit Court jury for the crime of manslaughter. On appeal, he challenges the sufficiency and weight of the evidence. Finding no error, we affirm.
FACTS
¶ 2. In the early morning hours of February 2, 2004, Brownlee and Shawn Morton, the victim, were patrons at the Huddle House restaurant on Highway 45 in West Point, Mississippi. The two men had an argument which led to a physical altercation in the Huddle House parking lot. Morton suffered a stab wound to his lower chest and died on the scene from bleeding. The specific circumstances of Morton’s death are the subject of this appeal and are discussed in detail below.
¶ 3. Brownlee was arrested and indicted for the crime of deliberate design murder. Miss.Code Ann. § 97-3-19 (Rev.2006). A jury convicted Brownlee of the lesser-included offense of manslaughter. His appeal has been deflected to this Court.
DISCUSSION

1. Sufficiency of Evidence

¶ 4. Brownlee argues that his motion for a directed verdict should have been granted. He directs our attention to his testimony that he was acting in self-defense. Brownlee relies on caselaw in stating that Morton’s hands could be deadly weapons. Hinson v. State, 218 So.2d 36 (Miss.1969). Brownlee argues that he was repelling Morton’s attack and had the right to defend himself. Miss.Code Ann. § 97-3-15 (Rev.2006); Manuel v. State, 667 So.2d 590 (Miss.1995); Jackson v. State, 594 So.2d 20 (Miss.1992). Brownlee concludes that the State failed to prove every necessary element of murder and the lesser-included offense of manslaughter. The issue of whether the evidence was sufficient to convict Brownlee of murder is moot since that was not the crime for which he was convicted.
¶ 5. In reviewing the denial of a directed verdict we consider all of the evidence in the light most favorable to the State. Shaw v. State, 915 So.2d 442, 448 (Miss.2005); Bush v. State, 895 So.2d 836, 843 (Miss.2005). Considering all reasonable inferences that could have been de *1065 rived from the evidence, we must determine whether a jury could not have found Brownlee guilty. Shaw, 915 So.2d at 448-49.
¶ 6. The crime of manslaughter requires “the killing of a human being, without malice, in the heat of passion, but in a cruel or unusual manner, or by the use of a dangerous weapon, without authority of law, and not in necessary self-defense.... ” Miss.Code Ann. § 97-3-35 (Rev.2006).
¶ 7. The evidence presented against Brownlee included a number of witnesses to the altercation. The situation leading to Morton’s death began to unfold when the two men exchanged certain statements in the restaurant. There were ten to fifteen people in the restaurant around the time of the fight. Restaurant occupants included on-duty Officer Mark Stafford of the West Point Police Department, off-duty Officer Albert Lee, Huddle House employees Keri Lomax and James Baker, and patrons Adam Winfield, Jason Smith, and James Mays. Officers Stafford and Lee had departed the restaurant prior to the fight between Morton and Brownlee.
¶ 8. Lomax testified to how the fight escalated. Just after the officers departed, Morton and Brownlee began to argue and became very loud. Brownlee extended his arms and stated something to the effect of wanting to take care of the disagreement. The men then walked toward the door and pushed each other a few times as they were walking outside. They began fighting on the sidewalk between the restaurant building and the parking lot. Lomax telephoned the West Point Police when the fight began. The actual fighting was very brief. Brownlee walked to his vehicle in the parking lot and extended his upper body into the vehicle to retrieve an object. The distance between Morton and Brownlee was about ten feet at this point. Brownlee walked back toward Morton and hit Morton in the middle of his torso, between his stomach and chest. Morton stepped back and Brownlee departed in his vehicle. Officer Stafford was pulling into the restaurant parking lot just as Brownlee pulled out onto the road.
¶ 9. Baker testified that he heard Brownlee and Morton arguing. Brownlee then went to the door and told Morton to come outside. Baker stated that Morton hit Brownlee in the head while the two were exiting the building through the foyer. Once outside the men exchanged a few punches. Brownlee took off his shirt and went to his vehicle. Brownlee then went back toward Morton and struck him in the chest area. Brownlee then returned to his car and Morton started bleeding.
¶ 10. Winfield testified that after the two had words, Brownlee walked through the door with Morton and began to fight outside of the building. Winfield stated that the fight was more like wrestling or tussling, and that not “many licks passed.” Winfield had moved from inside the building into the foyer, just inside from where the two men were fighting. After the brief altercation, Brownlee walked to his car and came back at Morton, striking him in the upper area of the abdomen. No weapon was seen but after Morton was struck he grabbed his chest and began bleeding. Brownlee then departed in his vehicle.
¶ 11. Smith testified that he accompanied Winfield to the restaurant before the altercation began; Brownlee and Morton were arguing about money. Morton made a statement about giving Brownlee money if he was broke. Brownlee gestured for the two to go outside and Brownlee opened the door leading into the foyer. Morton paused briefly before proceeding outside. The two men began to struggle a bit while passing through the foyer. The men continued to fight out onto the sidewalk and *1066 parking lot area near the building. Smith had gone outside when the men were fighting. After the initial fighting, Brownlee walked back to his car and then came back toward Morton. Smith stated that this is when Brownlee “stuck him.” Morton then stated, “[he] got me, he stabbed me.” Smith testified that he either saw a knife or at least that the object in Brownlee’s hand was “something [that] resembled a knife....”
¶ 12. Mays testified that a portion of the initial comments between Morton and Brownlee involved money — a comment Morton made to Brownlee about purchasing dinner for the female with Brownlee. Brownlee then offered for Morton to go outside, implying that the two would fight. The struggle began while the two men were going through the door and continued outside. The men broke apart and Brownlee went into his pocket, grabbed an object, and struck Morton. Mays was outside for the last part of the fight. He stated that he thought the object in Brownlee’s hand was a knife but did not know whether it was a knife or not. After Brownlee struck Morton, Morton stated, “[he] stabbed me, man.”
¶ 13. Officers Stafford and Lee testified that Morton and Brownlee exchanged words while the officers were in the restaurant but did not seem aggressive or confrontational. Morton entered the restaurant after the officers had already been there. Brownlee and his female companion entered the restaurant shortly after Morton had arrived. Morton dropped some money on the floor. Brownlee picked up the money, gave it back to Morton and made a statement to the effect that Morton needed to stop acting up. There was also some non-aggressive words between Morton and two other patrons about how much money Morton was being paid as a welder.
¶ 14. Morton again dropped some money on the floor and Brownlee approached Morton, picked up the money, gave it to Morton, and stated that Morton needed to leave the people alone. The two men continued to speak back and forth to each other in jest. Officers Stafford and Lee departed the restaurant. Shortly after leaving, Officer Stafford received a dispatch that there was a fight at the Huddle House.
¶ 15. Upon returning to the restaurant, he noticed Morton had blood on his shirt. Morton pointed at the car leaving the parking lot and stated, “that’s them.” Officer Stafford proceeded to pull over the vehicle which Brownlee was driving. He instructed Brownlee to return to the Huddle House and then arrested Brownlee upon receiving the information that Morton had been stabbed. Officer Lee also returned to the restaurant upon noticing a police car heading toward the Huddle House. He instructed Morton to sit down and then applied a towel to the wound in an effort to stop the bleeding. Morton died from excessive bleeding due to a stab wound to his lower chest. No knife or other weapon was recovered by police. An autopsy revealed that the wound was consistent with that which would be inflicted by a knife with one sharp edge and one blunt, consistent with many types of knife blades.
¶ 16. This evidence supports a conclusion that Brownlee was not under attack from Morton, and even that Brownlee advanced on Morton after the fight had ended. There is also evidence that could create a reasonable inference that Brownlee retrieved an object from his vehicle and then stabbed Morton. Despite Brownlee’s claim that he did not have a knife, did not stab Morton, and that such an action would be justifiable homicide for acting in self-defense, the jury could certainly have *1067 decided to believe the other witnesses to the incident. The credibility of a witness is for the jury to decide. Hobgood v. State, 926 So.2d 847, 854 (Miss.2006); Byrd v. State, 522 So.2d 756, 760 (Miss.1988).
¶ 17. Considering all of the evidence in the light most favorable to the State, and all reasonable inferences that could have been derived from the evidence, we conclude that a jury could have found Brown-lee guilty of killing Morton, in a cruel or unusual manner, or by the use of a dangerous weapon, without authority of law, and not in necessary self-defense. The trial court did not commit error in denying the motion for a directed verdict.

2. Weight of Evidence

¶ 18. Brownlee also argues that the trial court erred by overruling his motion for a new trial. He argues that the jury verdict was against the overwhelming weight of the evidence and to allow his conviction to stand would sanction unconscionable injustice. Groseclose v. State, 440 So.2d 297 (Miss.1983).
¶ 19. In reviewing a challenge to the weight of the evidence, we review the evidence in a light most favorable to the verdict, sitting as a limited thirteenth juror. Bush, 895 So.2d at 844. The verdict will be disturbed only if allowing it to stand would “sanction an unconscionable injustice.” Id.
¶ 20. The evidence discussed above demonstrates that multiple eyewitnesses perceived Brownlee strike Morton in the area where Morton was stabbed during their fight. Having already discussed the evidence against Brownlee, we can only conclude that allowing his conviction to stand would not sanction an unconscionable injustice. The trial court committed no error in overruling the motion for a new trial.
¶ 21. Brownlee briefly mentions that his conviction should not stand because of other errors made at trial but not raised in this appeal. This statement fails to raise an issue for review, and we have found no evident deficiencies in the fairness of the trial Brownlee received.
¶ 22. THE JUDGMENT OF THE CLAY COUNTY CIRCUIT COURT OF CONVICTION OF MANSLAUGHTER AND SENTENCE OF SIXTEEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, FOUR YEARS OF POST-RELEASE SUPERVISION AND A $1,250 FINE IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO CLAY COUNTY.
KING, C.J., LEE AND MYERS, P.JJ, IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR.